PRESTON H. HUFFT, Judge Pro Tem.,
dissenting with reasons.
I respectfully dissent. I would permit W.F. Wandell Developments, Inc. to intervene in the proceedings.
In January 1984, Wandell entered into negotiations with the Lupo interests to purchase six lots for the construction of a shopping center. At great cost, Wandell developed the marketability of the site as a shopping center and on June 25, 1984 for the consideration of $5,000.00 received an option to purchase the property in question for $1,850,000.00. The option was to remain open through July 6, 1984. On June 25, 1984, the Orleans Parish School Board passed a resolution instructing its attorney^ to file proceedings against Lupo to expropriate the same six lots as the negotiations between the School Board and Lupo for the purchase of the property had been unsuccessful. The purchase price offered by the School Board was $1,675,000.00.
On July 2,1984, the petition for expropriation was filed by the School Board. On July 6, 1984, Wandell exercised its option and signed a purchase agreement with Lupo for $1,850,000.00. Wandell gave Lupo a check for $87,500.00, which together with the $5,000.00 check for the option constituted the deposit in accordance with the purchase agreement. On July 6, 1984, but subsequent to the signing of the purchase agreement, Lupo was served with the expropriation petition. On July 9, 1984, the School Board filed a notice of lis pen-dens. Wandell did not record its option to purchase or its agreement to purchase until sometime after the July 9, 1984 filing of the notice of lis pendens. At no time during its negotiations with Lupo for the purchase of the property was Wandell aware of or had any knowledge of the interest of the School Board in the property.
Lupo filed an Exception of Non-Joinder of An Indispensible Party on the basis of its agreement to sell the property to Wan-dell for $1,850,000.00. Lupo averred that in view of the existence of the agreement to sell, a complete and equitable adjudication of the matter could not be made unless Wandell was joined in the proceedings. Wandell filed a Petition of Intervention, which was signed by a judge other than the judge to whom the case was allotted. The School Board filed Exceptions of No Cause or Right of Action to the Petition of Intervention on the basis of its reliance on the public records doctrine and the absence of a real right in the property on the part of Wandell. In its brief on the exceptions, the School Board, in view of the Wandell option and the exercise thereof in the agreement to purchase, made a judicial admission that the fair market value of the property was $1,850,000.00, the same figure as that provided in the agreement to purchase. Lupo’s exception of Non-Joinder of An In-dispensible Party was denied and the School Board’s exception to the Petition of Intervention was sustained. Lupo did not appeal but Wandell filed this appeal seeking recognition of its right to intervene to protect its personal interest in the agreement to purchase.
The filing of a notice of lis pendens merely serves as notice to third parties that if they enter into any transaction involving the property covered in the notice, they do so subject to the outcome of the litigation set forth in the notice. The filing of the notice of lis pendens does not affect the rights of the record owner and a third party under a contract to sell but merely *206 makes the rights acquired by the third party subject to the outcome of the litigation set forth in the notice.
Wandell has a valid agreement to purchase. The existence of that agreement is recognized by both Lupo and Wandell. In fact, the mere existence of that agreement caused the School Board to raise the fair market value of the property at the time of taking from $1,675,000.00 to $1,850,000.00. If Lupo and Wandell carried out the provision of the agreement to purchase, Wandell would then have purchased all the rights, title and interest of Lupo in and to the property in question subject to the resolution of the expropriation proceeding. Under such circumstances, Wandell would stand in the place of Lupo and would be able to contest the necessity for the taking and assert any right it may have as to whether the $1,850,000.00 it paid for the property was the fair market value of the property at the time of the filing of the expropriation proceedings. This right was recognized in State of Louisiana, Through the Department of Highways v. Luling Industrial Park, Inc., et al., 443 So.2d 672 (La.App. 5 Cir.1983) at page 674:
“The right to demand a fair market value and severance damages in an expropriation suit remains with the owner of the property at the time of the taking unless there is a specific transfer or assignment of this personal right. While this right is personal and does not follow the land, the right can be sold, assigned or otherwise encumbered. See Rogers v. La. Power & Light Co., 391 So.(2d) 30 (La.App. 3rd Cir.1980) and the cases cited therein.”
“State of Louisiana, Through the Department of Highways v. Luting Industrial Park, Inc., supra was an expropriation proceeding filed against the record owner. Prior to the filing of the expropriation proceedings, the record owner mortgaged the property. The mortgagee intervened in the proceeding because the mortgage assigned to the mortgagee any and all awards the mortgagor may receive from an expropriation proceeding to be applied against the mortgage. The mortgagee foreclosed on the property in a separate action and bought the property at a sheriffs sale. The property was then sold and resold a number of times and the last purchaser was recognized as the proper party in the eventual determination of the fair market value and the severance damages to the property as of the date of the filing of the expropriation proceedings. Wandell stands in an analogous position. It has a valid agreement to purchase all of the rights, title and interests of the record owner of the property and the only thing standing in the way of the performance of that agreement is the expropriation proceeding itself.
Under C.C.P. Art. 1091 “a third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto.” The existence of “an interest therein” has been interpreted as follows:
“It has been held that the interest required to authorize intervention must be a direct one by which the intervenor is to obtain immediate gain or suffer immediate loss by the judgment which may be rendered between the original parties. The interest must be closely connected with the object in dispute and founded on some right, lien, or claim, either conventional or legal.” United Gas Pipe Line Company v. Louisiana Public Service Commission, 130 So.2d 652, 656, 657 (La.1961).
Wandell has a definite interest in the present proceedings. The judgment rendered herein will determine the necessity for the taking and the fair market value of the property as of the time of the taking. The judgment will determine whether Wan-dell will be able to construct a shopping center on the property and reap the rewards of its expenditure of time and money. The present proceeding is the only forum in which Wandell will have an opportunity to assert and protect its personal rights under the agreement to purchase. To deny Wandell access to these proceedings will, in effect, deny it the opportunity to have its personal rights under the pur *207 chase agreement judicially determined. Wandell has more at stake in the outcome of these proceedings than the record owner. Since the School Board raised its fair market price to $1,850,000.00, Lupo has nothing to be gained or lost as a result of the judgment herein — the property will either be expropriated by the School Board or sold to Wandell under the purchase agreement for the same price.
Allowing Wandell to intervene does not do violence to the reliance on the public records doctrine nor does it fly in the face of the effect of the filing of a notice of lis pendens. Unlike the parties who seek to intervene or become a proper party to an expropriation proceeding in order to enforce a prior unrecorded right, which is in addition to the demands of the record owner, Wandell merely seeks to be placed in the position of Lupo as of the filing of the expropriation proceedings and enforce any and all rights Lupo has in defense of the action all in accordance with the agreement' by Lupo to sell to Wandell all rights, title and interest in the property in question.
Since I would allow W.F. Wandell Improvements, Inc. to intervene and protect its personal interest in the agreement to purchase, I do not rule on Wandell’s contention that the failure to do so violates its rights under LSA-Const. Art. 1, § 4 and § 22.
AFFIRMED.